1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER D. SCHNEIDER,              No.  2:14-cv-00804 GEB AC PS

12              Plaintiff,

13         v.                              ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14   SUTTER AMADOR HOSPITAL, ET AL.,

15              Defendants.

16

17         This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to

18   Local Rule 302(c)(21).  See 28 U.S.C. § 636(b)(1).  Before the court are four motions to dismiss

19   plaintiff's first amended complaint.  Defendants the Department of Motor Vehicles ("the DMV")

20   and the State of California ("the State") (collectively "the State defendants") move to dismiss for

21   lack of jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and, in the

22   alternative, for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  ECF

23   No. 47.  Defendant Dr. Richard F. Buss ("Dr. Buss") moves to dismiss for failure to state a claim

24   under Rule 12(b)(6).  ECF No. 48.  Dr. Buss also moves to strike plaintiff's first amended

25   complaint as untimely under Rule 12(f).  ECF No. 49.  Defendant Dr. Kurt Popke moves to

26   dismiss for failure to state a claim under Rule 12(b)(6).  ECF No. 50.  Defendants Sutter Amador

27   Hospital and Sutter Health (collectively "Sutter") move to dismiss for failure to state a claim

28   under Rule 12(b)(6).  ECF No. 51.  Plaintiff opposes all of the motions.  ECF No. 57.

1

On October 8, 2014, the court held a hearing on defendants' motions to dismiss and Dr. Buss's motion to strike. Plaintiff Christopher Schneider appeared pro se telephonically. Mary Greene appeared for Sutter; Patricia Perry appeared for Dr. Popke; John Feser appeared for the State defendants; and Thomas Garberson appeared for Dr. Buss. On review of the motions, the documents filed in support and opposition, upon hearing the arguments of plaintiff and counsel and good cause appearing therefore, THE COURT FINDS AS FOLLOWS:

PROCEDURAL HISTORY

On March 31, 2014, plaintiff initiated this action. ECF No. 1. Plaintiff filed a motion for temporary restraining order with his complaint, which was denied by the district judge assigned to this action. ECF Nos. 3, 6. On April 8, 2014, plaintiff filed a notice of interlocutory appeal of the denial of his motion for temporary restraining order. ECF No. 15.

Between April 28, 2014 and May 7, 2014, the State defendants, Dr. Buss, Dr. Popke and Sutter filed separate motions to dismiss. ECF Nos. 27, 29, 31–32.

On May 7, 2014, plaintiff filed an ex parte request to stay the proceedings and sought leave to file an amended complaint. ECF No. 35. On May 29, 2014, plaintiff filed a motion to stay the proceedings, which was vacated by the court for failure to properly notice the motion. ECF Nos. 39–40. On June 6 and June 9, 2014, defendants filed notices of no opposition. ECF Nos. 41–43. On June 10, 2014, the court issued an order denying plaintiff's ex parte request to stay proceedings, continuing the hearing on the motions to dismiss and directing plaintiff to file an amended complaint within twenty-one days under Rule 15(a) of the Federal Rules of Civil Procedure. ECF No. 44.

On July 2, 2014, plaintiff filed a first amended complaint. First Am. Comp. ("FAC"), ECF No. 45. In light of plaintiff's amended complaint, the outstanding motions to dismiss were vacated by the court. ECF No. 46.

Defendants filed renewed motions to dismiss between July 10 and July 22, 2014, and defendant Dr. Buss filed a motion to strike on July 14, 2014. ECF Nos. 47–51. Plaintiff filed an opposition to the outstanding motions on September 26, 2014. ECF No. 60. Each defendant filed ////

2

1    a response to plaintiff's opposition between September 29 and October 1, 2014.  ECF Nos. 56–

2    61.

3                                           LEGAL STANDARDS

4    A.      Lack of Subject Matter Jurisdiction

5            Federal courts are courts of limited jurisdiction, and are presumptively without

6    jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

7    (1994).  The burden of establishing the contrary rests upon the party asserting jurisdiction.  Id.

8    Because subject matter jurisdiction involves a court's power to hear a case, it can never be

9    forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630 (2002).

10           Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

11   motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

12   claims alleged in the action.  "A motion to dismiss for lack of subject matter jurisdiction may

13   either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the

14   existence of subject matter jurisdiction in fact."  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,

15   594 F.2d 730, 733 (9th Cir. 1979).

16           When a party brings a facial attack to subject matter jurisdiction, that party contends that

17   the allegations of jurisdiction contained in the complaint are insufficient on their face to

18   demonstrate the existence of jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039

19   (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards

20   similar to those applicable when a Rule 12(b)(6) motion is made.  See Sea Vessel Inc. v. Reyes,

21   23 F.3d 345, 347 (11th Cir. 1994); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir.

22   1990).  The factual allegations of the complaint are presumed to be true, and the motion is granted

23   only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.  Savage v.

24   Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); Miranda v.

25   Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).  Nonetheless, district courts "may review

26   evidence beyond the complaint without converting the motion to dismiss into a motion for

27   summary judgment" when resolving a facial attack.  Safe Air for Everyone, 373 F.3d at 1039.

28           When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no

                                                    3

1    presumption of truthfulness attaches to the plaintiff's allegations.  Thornhill Publ'g Co., 594 F.2d

2    at 733.  "[T]he district court is not restricted to the face of the pleadings, but may review any

3    evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

4    jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  When a Rule

5    12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden

6    of proving that jurisdiction does in fact exist.  Thornhill Publ'g Co., 594 F.2d at 733.

7    B.      Failure to State a Claim

8            The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

9    is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d

10   578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the

11   absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police

12   Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a

13   claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

14   (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief

15   on the plaintiff's claims, even if the plaintiff's allegations are true.

16           In determining whether a complaint states a claim on which relief may be granted, the

17   court accepts as true the allegations in the complaint and construes the allegations in the light

18   most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

19   United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

20           The court may consider facts established by exhibits attached to the complaint.  Durning

21   v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts

22   which may be judicially noticed, Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987),

23   and matters of public record, including pleadings, orders, and other papers filed with the court,

24   Mack v. S. Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept

25   legal conclusions "cast in the form of factual allegations."  W. Mining Council v. Watt, 643 F.2d

26   618, 624 (9th Cir. 1981).

27   ////

28   ////

4

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[1]

Plaintiff's first amended complaint alleges as follows.  On February 15, 2014 plaintiff was admitted to Sutter Amador Hospital's emergency room at approximately 3:30 in the morning for "dizziness and vomiting cause by a Black Widow Spider bite white he slept."  FAC at 4.  Dr. Popke filled out a California Confidential Morbidity Report ("CMR") that was forwarded to the DMV.  Id.  The DMV subsequently suspended plaintiff's driver's license for a physical disability.  Id.  As a result of the suspension of his driver's license, plaintiff lost his pilot's license privileges and his "daily fundamental rights in and at his home" have been infringed upon.  Id. (emphasis and quotations omitted).

"Plaintiff does not have telephone or internet at his home, and thus requires the use of his driver's (and pilot's) license for literally all First Amendment public and private communication and for related interstate law library research involving the use of the federal courts as a direct and public media of expression for the advancement of beliefs and ideas on civil-liberties, political, social, and governmental change as well as a way to vindicate his federal and Constitutional rights to seek justice, prosecute oppression, and challenge, change, or enforce the laws."  FAC ¶ 17 (emphasis and quotations omitted).

When plaintiff went to Sutter Amador Hospital on the morning of February 15, 2014, complaining of symptoms caused by a black widow spider bite, the emergency room doctor and Dr. Popke misdiagnosed him with vertigo, "performed unneeded excessive tests" on him, and filed a CMR with Amador County's Department of Health.  Id. ¶ 18.  Thereafter, plaintiff was informed by Dr. Buss of a DMV report when Dr. Buss performed a doctor medical evaluation "misdiagnosing the Black Widow Spider bite classical symptoms as vertigo . . . ."  Id.  Plaintiff was discharged on February 15, 2014 by Dr. Buss "with no limitations."  Id.  "[B]etween the February 15, 2014 discharge and up until the March 30, 2014 'suspension' plaintiff had driven his

---

[1] Both Dr. Buss and Dr. Popke seek judicial notice of plaintiff's first amended complaint.  ECF Nos. 48-2, 50-2.  However, it is unnecessary to take judicial notice of documents already in the record.  See Aguirre v. Home Depot U.S.A., Inc., No. 1:10–cv–00311–LJO–GSA, 2012 WL 3639074, at *7 (E.D. Cal. Aug. 23, 2012) (citing Lew v. U.S. Bank Nat. Ass'n, No. C 11–4546 RS, 2012 WL 1029227, at *1 n.1 (N.D. Cal. Mar. 26, 2012)).  Accordingly, Dr. Buss and Dr. Popke's requests are denied as unnecessary.

multiple vehicles both day and night in all traffic conditions and weather, has had no accidents,

citations, lapse of consciousness or any medical, mental, or physical issues that at any time would

have unduly impaired his ability to safely drive . . . ."  Id. (emphasis omitted).  On "March 21,

2014 plaintiff [had] an editorial in the Amador Ledger Dispatch published stating 'I write in the

hopes that others will learn from my experiences, since too often people are afraid to publicly

speak out against abuses and everyone will be admitted to a local hospital' which criticizes" the

DMV and Sutter Amador Hospital.  Id.; see also id. Ex. 3.  On March 28, 2014, plaintiff received

a one-page order of suspension/revocation of his driver's license from the DMV.  Id.

       Plaintiff alleges that

> since March 30, 2014 until the present June 30, 2014, a period of 90
> days, plaintiff has been irrevocably deprived of both his driver's
> license and his pilot's license privileges-which have never been
> restored (see V.C. §13556(c))-in addition to *inter alia* having his
> good name, confidential health information ("an individual's
> private interests or concerns" Riley v. California, 573 U.S. __ (June
> 26, 2014)) and physical fitness clouded by the misdiagnosis, filing
> of the CMR, license suspension, and reporting of that suspension to
> the National Drivers Registry[] database all solely because he went
> to the SUTTER AMADOR HOSPITAL ER room innocently
> seeking medical help for a Black Widow Spider bite (Cal. Civ. C.
> § 3526 "No man is responsible for that which no man can control"),
> see also Hippocratic oath.

Id.

       Plaintiff sets forth twelve separate claims: (1) invasion of fundamental zone of privacy

and liberty interests, id. at 10; (2) fraudulent paper trail and illegal use of personal health

information, id. at 11; (3) violation of Fourteenth Amendment rights to procedural and

substantive due process, id. at 13; (4) violation of First Amendment rights, id. at 15; (5) violation

of Fourth Amendment rights, id. at 16; (6) violation of Fifth Amendment rights id. at 17; (7)

violation of Sixth Amendment rights, id.; (8) unconstitutionality of Health and Safety Code

section 103900 and Vehicle Code sections 13953, 13556(c), 14100(b) & (c), 14101(a), 13800–

801, and 13102, id. at 18; (9) negligence and/or gross negligence, id. at 19; (10) medical

malpractice, lack of informed consent, patient approval, and communication, id. at 21; (11)

federal preemption of state law, id. at 22; and (12) deprivation of rights under 42 U.S.C. § 1983,

id. at 23.  The allegations regarding each claim are discussed in detail below.

Plaintiff seeks the following relief in his first amended complaint against all defendants:

> 1. For injunctive relief enjoining the "suspension" order of DMV dated March 26, 2014, Health and Safety Code Section 103900, and *inter alia* Vehicle Code §13953;

> 2. For all costs of suit, expenses under 42 U.S.C. § 1988 et al, and any attorney fees;

> 3. For declarative relief under 28 U.S.C. § 2283 as to all causes and specifically as to the issues involving plaintiffs federal pilot's license, state vehicle and health and safety codes, as being unconstitutional and violating petitioner's constitutional rights as alleged;

> 4. For general, compensatory, and nominal damages according to proof;

> 5. For any other relief as the court deems proper as to each cause.

Id. at 24.

## DISCUSSION

A.      Section 1983

The United States Constitution establishes certain rights, but does not provide a mechanism to enforce them.  Accordingly, a claim that constitutional rights have been violated does not proceed directly under the Constitution.  Azul–Pacifico, Inc. v. City of L.A., 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution.").  Rather, 42 U.S.C. § 1983 provides a federal cause of action for the deprivation of rights secured by the Constitution.  Livadas v. Bradshaw, 512 U.S. 107, 132 (1994).  Plaintiff sets forth six separate claims based on alleged violations of his rights under the United States Constitution.  These must be construed as claims brought under § 1983.  For plaintiff's claims to proceed, however, they must comport with the requirements of the statute.  Among those requirements are limitations on who may be sued.

1.      The State of California and the California Department of Motor Vehicles

As noted, plaintiff's claims turn on an alleged driver's license suspension in violation of his due process rights, which resulted in further deprivation of his constitutional rights.  Plaintiff seeks declaratory relief as to all claims; injunctive relief in the form of an order enjoining the suspension of his driver's license; general, compensatory and nominal damages; and any other

7

1    relief the court deems proper.

2           The Eleventh Amendment provides that "[t]he judicial power of the United States shall

3    not be construed to extend to any suit . . . against one of the United States by Citizens of another

4    state, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  In general, the

5    Eleventh Amendment bars suits against an "un-consenting" state, absent the state's affirmative

6    waiver of its immunity or congressional abrogation of that immunity.  Pennhurst v. Halderman,

7    465 U.S. 89, 98-99 (1984); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1161 (9th

8    Cir. 2003); Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1245 (9th

9    Cir. 1999); see also Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616

10   F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against the State or its

11   agencies for all types of relief, absent unequivocal consent by the state.").  The Ninth Circuit has

12   recognized that "[t]he State of California has not waived its Eleventh Amendment immunity with

13   respect to claims brought under § 1983 in federal court, and the Supreme Court has held that

14   § 1983 was not intended to abrogate a State's Eleventh Amendment immunity."  Brown v. Cal.

15   Dept. of Corrections, 554 F.3d 747, 752 (9th Cir. 2009) (quoting Dittman v. California, 191 F.3d

16   1020, 1025–26 (9th Cir. 1999)).  State agencies are entitled to the same immunity as the state

17   itself.  In re Harleston, 331 F.3d 699, 701 (9th Cir. 2003); see also Sykes v. State of California

18   (Dep't of Motor Vehicles), 497 F.2d 197, 201–02 (9th Cir. 1974) ("[A] civil rights action under

19   Sections 1983 or 1985 will not lie against an administrative agency of a state, such as the

20   Department of Motor Vehicles.").  This shield emphasizes the "integrity retained by each state in

21   the federal system."  Hess v. Port Auth. Trans–Hudson Corp., 513 U.S. 30, 39 (1994).

22          Section 1983 provides a federal claim against a "person who . . . causes . . . any citizen of

23   the United States . . . the deprivation of any rights, privileges, or immunities secured by the

24   Constitution."  42 U.S.C. § 1983.  Only "person[s]" may be sued for depriving civil rights under

25   § 1983, and states are not "person[s]" within the meaning of § 1983.  Will v. Mich. State Dep't of

26   Police, 491 U.S. 58, 65 (1989).  Thus, the State and the DMV cannot be sued under § 1983 in this

27   action.  Id.

28          During the hearing, plaintiff argued that Eleventh Amendment immunity does not apply to

his declaratory and injunctive relief claims.  That is not correct.  The Eleventh Amendment bars suits against the State or its agencies for all types of relief.  Krainski, 616 F.3d at 967.  A suit for declaratory and injunctive relief may be maintained against the appropriate state officials in their official capacities, Will, 491 U.S. at 71 & n. 10, but not against the State and its agencies as such.

Because the State of California and the California Department of Motor Vehicles are immune from suit under the Eleventh Amendment, and are not "persons" who can be sued under § 1983, the claims against them must be dismissed.  Because amendment would be futile, the dismissal should be with prejudice.

> 2.   Dr. Buss, Dr. Popke and Sutter Defendants

Plaintiff also asserts constitutional claims against defendants Dr. Buss, Dr. Popke and Sutter.  None of these defendants are public officials, employees or entities.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988). A private individual's conduct constitutes action under color of state law only if it is "fairly attributable" to the state.  West, 487 U.S. at 49–50 (holding a private medical doctor acting under contract with a state to provide medical services to inmates is a state actor for purposes of § 1983).  The under-color-of-state-law element is a "jurisdictional requisite" for a § 1983 action. Id. at 46.

The Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State" and adopted a "two-part approach to this question of 'fair attribution.'"  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).  Conduct that causes the deprivation of a federal right may be fairly attributable to the state if (1) the deprivation is caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible; and (2) the party charged with the deprivation is a person who may fairly be said to be a state actor.  See Fred Meyer, Inc. v. Casey, 67 F.3d 1412, 1414 (9th Cir. 1995) (citing Lugar, 457 U.S. at 937).

"When addressing whether a private party acted under color of law, we . . . start with the

1   presumption that private conduct does not constitute governmental action." <u>Sutton v. Providence</u>

2   <u>St. Joseph Med. Center</u>, 192 F.3d 826, 835 (9th Cir. 1999); <u>see</u> <u>Price v. Hawaii</u>, 939 F.2d 702,

3   707–08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law.").

4   Occasionally, a private party may be found to be a state actor if "he is a willful participant in joint

5   action with the State or its agents." <u>Dennis v. Sparks</u>, 449 U.S. 24 at 27–28 (1980). "[S]tate

6   action may be found if, though only if, there is such a close nexus between the state and the

7   challenged action that seemingly private behavior may be fairly treated as that of the state itself."

8   <u>Brentwood Academy v. Tenn. Secondary Sch. Athletic Assoc.</u>, 531 U.S. 288, 295 (2001). Private

9   parties have been treated as state actors when they are controlled by a state agency, when they

10  have "been delegated a public function by the [s]tate," when they are "entwined with

11  governmental policies," and when the "government is entwined in [their] management or

12  control." <u>Brentwood Academy</u>, 531 U.S. at 296.

13      Plaintiff contends that Dr. Buss, Dr. Popke and Sutter can be sued under § 1983 because

14  they receive significant sums of money from the State defendants and "from taxpayer funded or

15  subsidized sources both State and Federal." FAC ¶ 70. Plaintiff alleges that as a result of this

16  "large funding" there is a "symbiotic relationship" with the state defendants "where they provide

17  inappropriate and highly personal information confidential health information to STATE and

18  willfully, negligently, and against the public interest betray the trust put in them by patients in

19  exchange for such financial remunerations." FAC ¶ 70. <u>Id.</u> At hearing on the instant motions,

20  plaintiff  argued that Drs. Buss and Popke are in a symbiotic relationship with the State that

21  creates reciprocity for their actions. Plaintiff argued further that Drs. Buss and Popke acted under

22  color of state law because they disclosed his confidential information to the State defendants

23  under section 103900 of the California Health and Safety Code ("section 103900").[2]

24      First, the defendants' alleged receipt of *federal* funding cannot support a finding that they

25  acted under color of *state* law. Section 1983 does not provide a cause of action against parties

26  ───────────────
    [2] As noted below, section 103900 provides, in part: "Every physician and surgeon shall report
27  immediately to the local health officer in writing, the name, date of birth, and address of every
    patient at least 14 years of age or older whom the physician and surgeon has diagnosed as having
28  a case of a disorder characterized by lapses of consciousness." CAL. HEALTH & SAFETY CODE
    § 103900(a).

1   who act under color of federal law.  Billings v. United States, 57 F.3d 797, 801 (9th Cir. 1995).

2          Second, regulation by and funding from the state fail to transform these private defendants

3   into state actors for purposes of § 1983.  While hospitals are highly regulated and state funds may

4   be provided to them for various purposes, neither receipt of state funds, "'the enjoyment by the

5   hospital of tax exemptions, its regulation by the state [nor] its performance of a public function' .

6   . . are proper grounds for holding that it acted under color of state law with respect to" § 1983.

7   Taylor v. St. Vincent's Hosp., 523 F.2d 75, 77 (9th Cir. 1975) (quoting Chrisman v. Sisters of St.

8   Joseph of Peace, 506 F.2d 308, 312-14 (9th Cir. 1974)).

9          Third, the doctors' compliance with state reporting requirements does not make them state

10  actors.  Plaintiff essentially argues that because Drs. Buss and Popke were acting in accordance

11  with section 103900, they acted on behalf of the state.  It is well-established that a doctor does not

12  become a state actor by filing a report required by state law.  Mueller v. Auker, 700 F.3d 1180,

13  1191-92 ("State law does not amount to an actionable hospital policy."  (citing Sutton, 192 F.3d

14  at 838; Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002))).  Moreover, "in a case involving a

15  private defendant, the mere fact that the government compelled a result does not suggest that the

16  government's action is 'fairly attributable' to the private defendant.  Indeed, without some other

17  nexus between the private entity and the government, . . . the private defendant is not responsible

18  for the government's compulsion."  Sutton, 192 F.3d at 838.  There is nothing in the first

19  amended complaint to suggest, for example, that the state delegated to Drs. Buss or Popke the

20  public function of provision of medical care to plaintiff.  Plaintiff is not a ward of the state, and

21  the first amended complaint indicates that he sought care as a private citizen.  For the purpose of

22  § 1983, Drs. Buss or Popke cannot fairly be said to be state actors.

23          Finally, to the extent plaintiff's constitutional claims against Sutter are based on the

24  conduct of Dr. Buss or Dr. Popke, that conduct alone is not enough to establish liability.  To hold

25  Sutter liable for acts of the doctors, plaintiff must show that Sutter is a state actor and that the

26  doctors committed the alleged constitutional violations according to the official policy or custom

27  of the hospital.  See Monell v. Dept. of Social Servs. of N.Y., 436 U.S. 658, 690-91 (1978) ("[A]

28  municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a

1  municipality cannot be held liable under § 1983 on a respondeat superior theory."  (emphasis

2  omitted)).  Here, because Sutter is not a municipality or a state actor under § 1983, the first

3  amended complaint fails to allege a constitutional violation according to a hospital policy.

4         For all these reasons, plaintiff's constitutional claims against defendants Dr. Buss, Dr.

5  Popke and Sutter must be dismissed with prejudice as not cognizable under § 1983.

6  B.     Constitutional Claims

7         As noted, plaintiff's constitutional claims against all defendants must be dismissed

8  because no moving defendant is susceptible to suit under § 1983.  The court notes further that

9  plaintiff's constitutional claims individually fail to state a claim upon which relief may be

10  granted, and must be dismissed on that basis as well.

11        1.     Fourth Amendment and Due Process Privacy Protections

12        Plaintiff's first and fifth claims allege a violation of his Fourth Amendment rights and an

13  invasion of his fundamental zone of privacy and liberty interests.  Plaintiff alleges that his

14  "medical information is now stored and transferred into digital files, and this information is much

15  more personal than the information stored in a cell phone that has now been held to finally require

16  a 'warrant' and 'probable cause' in order for governmental officials to get any access to such

17  information."  FAC ¶ 43.[3]  Plaintiff alleges that he has an expectation of privacy in all his medical

18  records and that his medical records were provided to the DMV without his consent.  FAC ¶¶ 21–

19  22.  Plaintiff further alleges his medical records were "'seized' under color of law and 'disclosed'

20  by all defendants to 'any' other defendants . . . without plaintiff's knowledge, an opportunity to

21  object, a 'warrant' based on 'probable cause' and other Fourth Amendment alleged 'protections'

22  as outlined in cases such as Terry v. Ohio, 392 U.S. 1 (1968), Katz v. United States, 389 U.S. 347

23  (1967), Johnson v. United States, 333 U.S. 10 (1948) including protections more stringent than

24  any 'Miranda' warning."  FAC ¶ 42.

25        The Fourth Amendment protects individuals against unreasonable searches and seizures.

26

27  [3] Plaintiff's first claim is related to the dissemination of his medical records and will therefore be
   addressed with plaintiff's fifth claim.  To the extent plaintiff intends to allege a state law claim for
   invasion of privacy, in light of the court's recommendation to dismiss all federal claims, the could
28  also recommends not exercising supplemental jurisdiction over plaintiff's state claim.

1   See U.S. CONST. amend. IV.  "The Fourth Amendment is not, of course, a guarantee against all

2   searches and seizures, but only against unreasonable searches and seizures."  United States v.

3   Sharpe, 470 U.S. 675, 682 (1985).  The Fourth Amendment applies to conduct by government

4   actors and is not limited to law enforcement officers.  See, e.g., New Jersey v. T.L.O., 469 U.S.

5   325, 340 (1985); see also O'Connor v. Ortega, 480 U.S. 709, 714 (1987).

6        Apart from the Fourth Amendment prohibition on unreasonable searches and seizures, the

7   Constitution does protect the privacy of personal information including medical information.  See

8   Whalen v. Roe, 429 U.S. 589 (1977).  However, this general principle does not prevent states

9   from establishing public safety protocols that utilize personal medical information.  In Whalen,

10   for example, the Supreme Court approved a New York State database of the names and addresses

11   of individuals who obtained prescriptions for certain drugs.  The Court upheld against

12   constitutional challenge a requirement that physicians report such information to the State

13   Department of Health.  State law limited use of the information, and prohibited its public

14   dissemination.  Whalen, 429 U.S. at 593-95.  The Court concluded that the statutory scheme

15   permissibly balanced individual privacy interests with legitimate public health and safety goals.

16   Id. at 597-98, 600-04.

17        Here, plaintiff's allegations regarding a violation of his Fourth Amendment and privacy

18   rights are vague and conclusory.  Other than plaintiff's allegations that his medical records were

19   seized and disclosed, plaintiff provides no detail regarding the dissemination of his information.

20   Moreover, information regarding plaintiff's diagnosis was required by law to be reported to the

21   local health officer.  CAL. HEALTH & SAFETY CODE § 103900(a).  This section provides that the

22   report "shall be kept confidential and used solely for the purpose of determining the eligibility of

23   any person to operate a motor vehicle . . .," id. § 103900(c), and making the report is a protected

24   activity, id. § 103900(f) ("A physician and surgeon who reports a patient diagnosed as a case of a

25   disorder characterized by lapses of consciousness pursuant to this section shall not be civilly or

26   criminally liable to any patient for making any report required or authorized by this section.").

27   Therefore, plaintiff cannot bring a civil claim against Drs. Buss and Popke for reporting his

28   medical information to the local health officer.  Finally, under California law, the DMV has the

1  authority to require medical information to enforce the Vehicle Code.  Id. § 103900(c).  As the

2  Supreme Court said in Whalen, "Requiring such disclosures to the representatives of the State

3  having responsibility for the health [or safety] of the community, does not automatically amount

4  to an impermissible invasion of privacy."  Whalen, 429 U.S. at 602.

5       California's statutory scheme, like that at issue in Whalen, reasonably balances individual

6  privacy interests and public safety needs.  Accordingly, the agency's use of medical information

7  for the purpose required by law does not violate the Fourth Amendment even if it constitutes a

8  "seizure."  For the same reasons, there is no impermissible invasion of a constitutionally-

9  protected privacy interest.  Claims one and five therefore should be dismissed.

10       2.       Fourteenth Amendment Due Process

11       Plaintiff's third claim alleges that Dr. Popke and Sutter's "actions, inactions, and lack of

12  appropriate procedures and protocols directly led to the improper, premature, and baseless filing

13  of the CMR by POPKE and other defendants by extension for what amounted to a temporary

14  medical situation . . . ."  FAC ¶ 33.  Plaintiff alleges that Dr. Buss "should have been and was

15  familiar with prior baseless and unsupported filed CMR'S regarding other patients treated at"

16  Sutter and his "silence helped create the denial of procedural and substantive due process . . . ."

17  FAC ¶ 34.

18       With regard to the State defendants, plaintiff alleges that application of section 103900 of

19  the California Health and Safety Code denied him due process because it "does not properly

20  provide for either any mandatory notice (pre or post) to the patient by the reporting physician of

21  the filing of any CMR . . . ."  FAC ¶ 35 (emphasis omitted).  Plaintiff further alleges the State

22  defendants violated his due process rights because of "the Constitutionally inadequate informal

23  administrative procedures that circumvent the Administrative Procedures Act and related

24  Administrative hearing Bill of Rights . . ." and because "[n]o proper notice of the ex parte charges

25  against plaintiff and his personal health/bodily integrity" was given.  Id. (emphasis and internal

26  quotations omitted).  The crux of then claim is that plaintiff's due process rights were violated

27  because his driver's license was revoked without proper notice.

28       "It is clear that the Due Process Clause applies to the deprivation of a driver's license by

1   the State[,]" and that "'licenses are not to be taken away without that procedural due process

2   required by the Fourteenth Amendment.'"  Dixon v. Love, 431 U.S. 105, 112 (1977) (quoting

3   Bell v. Burson, 402 U.S. 535, 539 (1971)); see also Mackey v. Montrym, 443 U.S. 1, 10 n.7

4   (1979).  "The fundamental requisite of due process of law is the opportunity to be heard."

5   Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Ford v.

6   Wainwright, 477 U.S. 399, 413 (1986).  Thus, "[a]n elementary and fundamental requirement of

7   due process in any proceeding which is to be accorded finality is notice reasonably calculated,

8   under all the circumstances, to apprise interested parties of the pendency of the action and afford

9   them an opportunity to present their objections."  Mullane, 339 U.S. at 314; see also Tulsa Prof'l

10  Collection Servs., Inc. v. Pope, 485 U.S. 478, 484 (1988).

11          California law provides for notice and an opportunity to be heard under the circumstances

12  at issue here.  Vehicle Code section 13953 provides, in part:

13                  [I]n the event the department determines upon investigation or
                    reexamination that the safety of the person subject to investigation
14                  or reexamination or other persons upon the highways require such
                    action, the department shall forthwith and without hearing suspend
15                  or revoke the privilege of the person to operate a motor vehicle or
                    impose reasonable terms and conditions of probation which shall be
16                  relative to the safe operation of a motor vehicle.

17  CAL. VEH. CODE § 13953.  A suspension or revocation under section 13953 "shall become

18  effective until 30 days after the giving of written notice thereof to the person affected, except that

19  the department shall have authority to make any such order effective immediately upon the giving

20  of notice when in its opinion because of the mental or physical condition of the person such

21  immediate action is required for the safety of the driver or other persons upon the highways."  Id.

22  To satisfy the due process notice requirement, California law requires the DMV to provide first-

23  class mail notice to an individual's most recent address reported to the DMV when a driver's

24  license is suspended.  CAL. VEH. CODE § 13106(a); see Banks v. Dep't of Motor Vehicles for

25  Cal., 419 F. Supp. 2d 1186, 1195 (C.D. Cal. 2006).

26          California Vehicle Code section 14100 states, "whenever the department has given notice

27  . . . under Section . . . 13953, the person receiving the notice or subject to the action may, within

28  10 days, demand a hearing which shall be granted . . . ."  CAL. VEH. CODE § 14100(a).  "If the

                                                    15

1    department grants a hearing . . . it shall fix a time and place for the hearing and shall give 10

2    days' notice of the hearing to the applicant or licensee." CAL. VEH. CODE § 14104.

3        These provisions of state law satisfy the due process rights of drivers subject to

4    suspension or revocation under section 13953.  The U.S. Supreme Court has expressly held that

5    due process does not require an administrative hearing prior to revocation of driving privileges.

6    Dixon, 431 U.S. at 107.  Moreover, a motorist does not have a fundamental "right to drive."

7    Miller v. Reed, 176 F.3d 1202 (citing Dixon, 431 U.S. at 112–16; Mackey v. Montrym, 443 U.S.

8    1, 10 (1979); Bell v. Burson, 402 U.S. 535, 539, 542–43 (1971)); see also Cassim v. Bowen, 824

9    F.2d 791, 797 n.2 (9th Cir. 1987) ("A long-established principle of due process jurisprudence is

10   that Government must sometimes be allowed to act promptly to avoid public harm." (collecting

11   cases)).

12       Plaintiff argues here that he did not receive proper notice of the suspension of his driver's

13   license.  However, his first amended complaint acknowledges that he received notification of the

14   suspension of his driver's license in the mail.  FAC ¶ 18; see also id. Ex. 2 (DMV order of

15   suspension/revocation).  The order of suspension/revocation is dated March 26, 2014 and states

16   that plaintiff's driver's license privilege is being suspended effective March 30, 2014 because of a

17   physical disability.  The document also states that plaintiff has a right to request a hearing and

18   provides a fourteen day period to do so.  Id.  Plaintiff conceded at the hearing on the instant

19   motions that he received written notification of the suspension.  Plaintiff represented to the court

20   that he did not request a hearing as provided for in the notice, but rather filed a claim in federal

21   court to protect his constitutional rights.  Plaintiff contends that this course was appropriate

22   because the notice he received was not reasonable or appropriate under the circumstances.

23       Plaintiff's personal opinion regarding the adequacy of the notice does not suffice to state a

24   due process claim.  Plaintiff's driver's license was suspended without an administrative hearing

25   under section 13953.  He was given notice of the immediate suspension and afforded fourteen

26   days to request a hearing, as provided by section 14100(a).  In light of the notice and opportunity

27   to be heard, the suspension of plaintiff's license did not violate his due process rights.  Dixon, 431

28   U.S. at 107.

For these reasons, plaintiff's due process claim lacks merit.  With regard to allegations against Dr. Buss, Dr. Popke and Sutter, plaintiff's driver's license was revoked by the DMV, not by the remaining defendants.  Accordingly, a due process claim against the medical defendants is not cognizable.  Accordingly, this claim must be dismissed.

3.     First Amendment Retaliation

Plaintiff's fourth claim asserts that the State defendants, Dr. Popke and Sutter violated his First Amendment rights by suspending his license following the article he wrote.  Plaintiff's allegations fail to state a claim upon which relief can be granted.

Plaintiff alleges these defendants "have set in motion and continued have [sic] irreparably infringed upon plaintiff's First Amendment rights to *inter alia*, access to the courts, access to vote, access to law libraries needed to defend himself in this complex litigation, access to friends and family (local and interstate) and a host of other First Amendment activities that require a driver's license . . . ."  FAC ¶ 37 (emphasis omitted).  Plaintiff alleges that the suspension of his driver's license took place after his editorial speech, see id. Ex. 3, and is intended to punish or suppress his current and future speech.  Id. ¶ 40.  Plaintiff alleges Dr. Popke and Sutter "had state officials punish him and suppress his current and future speech . . . by their actions . . . ."  FAC ¶ 40 (quotations omitted).  Plaintiff alleges defendants "suspiciously immediately suspend[ed] his license shortly after the publication of his Amador County Ledger Dispatch Editorial of March 21, 2014 that publicly criticized DMV, POPKE, SUTTER AMADOR HOSPITAL for the events of February 15, 2014 and the filing of the baseless CMR."  Id. (quotations omitted).

"To establish a First Amendment retaliation claim . . . a plaintiff must show that: (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."  Corales v. Bennett, 567 F.3d 554, 563 (9th Cir. 2009) (quoting Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006)).  A retaliation claim is not adequately pled by simply pointing to adverse activity by the defendant after protected speech has been engaged in by the plaintiff.  Instead, the plaintiff must allege facts demonstrating a nexus between the two.  See Huskey v.

17

1   City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical

2   fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").

3          Here, while plaintiff alleges a belief that the suspension of his license and his protected

4   speech are "suspiciously" connected, FAC ¶ 40, he fails to allege any facts that would support the

5   inference of a causal nexus between plaintiff's article and the suspension of his license.  Indeed,

6   with regard to Dr. Popke and Sutter, plaintiff's article was written after Dr. Popke allegedly

7   misdiagnosed plaintiff and his symptoms were reported to the DMV.  Thus, plaintiff's alleged

8   protected activity of writing an article cannot have been a "motivating factor" in Dr. Popke's and

9   Sutter's conduct.  Accordingly, this claim must be dismissed.

10             4.      Fifth Amendment Due Process

11         Plaintiff's sixth claim regarding a violation of his Fifth Amendment rights also fails.

12  Plaintiff alleges the DMV and the State of California deprived him of "his vested property

13  interests and his 'liberty and property' without 'due process' and by their actions have taken

14  plaintiff's 'private property for public use without just compensation.'"  FAC ¶ 46.  Plaintiff

15  further alleges defendants have "taken away his livelihood, ability to feed himself, move about

16  interstate in a normal fashion, and countless other 'liberty and property' interests big and small all

17  under the false pretense of for the 'public good' when there exists no valid reasons for such

18  actions."  Id. ¶ 47.

19         The Fifth Amendment provides that no person shall "be deprived of life, liberty, or

20  property, without due process of law."  U.S. CONST. amend. V.  The Fifth Amendment applies

21  only to actions by the federal government, and not to the actions of private actors.  Rank v.

22  Nimmo, 677 F.2d 692, 701 (9th Cir. 1982).  There must be a "significantly close nexus" between

23  the federal government and the actor for the Fifth Amendment to apply to nonfederal entities.  Id.

24  Plaintiff fails to allege any connection between the State defendants and the federal government.

25  Therefore, plaintiff cannot allege a cognizable claim against the State defendants on Fifth

26  Amendment grounds and this claim must be dismissed.

27             5.      Sixth Amendment Right to Counsel

28         Plaintiff's seventh claim alleges a violation of his Sixth Amendment right to counsel

18

against the State and the DMV.  FAC ¶ 50.  Plaintiff alleges the State defendants "have deprived [him] of his rights to confront his accusers" because he "was never given any opportunity before the suspension Order to challenge the erroneous diagnosis, actions, inactions etc. of defendants, and even after requesting a post-administrative hearing DMV refused to subpoena witness [sic] he needed for his defense, refused to provide a detailed explanation of how to read plaintiff's DMV printout, or to provide him with any information regarding the hearing process and numerous other rights that were critically needed for his defense."  Id. (emphasis and internal quotations omitted).  Plaintiff alleges the DMV "violated his Constitutional rights and they should be providing him with appointed Counsel under the Sixth Amendment regardless of how the suspension action is classified."  Id. ¶ 51.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI.  This right, extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses.  Pointer v. Texas, 380 U.S. 400, 403 (1965).  It guarantees the defendant a face-to face meeting with witnesses appearing before the trier of fact.  See Coy v. Iowa, 487 U.S. 1012, 1020–22 (1988).

Plaintiff has not been criminally prosecuted and the constitutional protections afforded to criminal defendants are inapplicable to the revocation of driver's licenses.  Accordingly, this claim must be dismissed.

6.      Unconstitutionality of Health and Safety Code and Vehicle Code Sections

In his eighth claim against the DMV and the State, plaintiff alleges that "Health and Safety Code Sec. 103900 is unconstitutional both on its face and as applied" and "Vehicle Code Sec. 13953 is challenged as unconstitutional both on its face and as applied."  FAC ¶¶ 53–55.

To the extent plaintiff seeks to have this court declare various state laws unconstitutional, the DMV and the State are not proper parties.  See Serrano v. Priest, 18 Cal. 3d 728, 752 (1977) ("it is the general and long-established rule that in actions for declaratory and injunctive relief challenging the constitutionality of state statutes, state officers with statewide administrative

1    functions under the challenged statute are the proper parties"). Accordingly, this claim must be

2    dismissed. Moreover, the challenged statutory provisions are consistent with due process and

3    constitutional privacy protections for the reasons previously explained. See Dixon, 431 U.S. 105;

4    Whalen, 429 U.S. 589.

5           7.    Federal Preemption

6        Plaintiff alleges "there exists specific and numerous conflicts with National driver and

7    federal aviation laws." FAC ¶ 67. Plaintiff alleges the "filing of the CMR and DMV order of

8    suspension has deprived him of the use of his federal rights without any pre-deprivation due

9    process, or probable case [sic], and that there is a direct conflict between the approval and vested

10    rights that he has with his federal medical certificate." Id. Plaintiff alleges that "[b]y the very

11    terms of 14 C.F.R. §61.23 plaintiff who wishes to exercise the privileges of his pilot's license

12    cannot while the CMR induced medical cloud remains upon his record . . . ." Id.

13        The nature of this claim is unclear. The federal preemption doctrine is not a source of

14    jurisdiction. It does not create a cause of action that provides a basis for suit. Rather, preemption

15    generally operates to foreclose state law claims in areas governed by federal law.

16        A court finds federal preemption where: "(1) Congress enacts a statute that explicitly pre-

17    empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a

18    legislative field to such an extent that it is reasonable to conclude that Congress left no room for

19    state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (quoting

20    Tocher v. City of Santa Ana, 219 F.3d 1040, 1045 (9th Cir. 2000)). "These three forms of

21    preemption are commonly referred to as express, [conflict], and [field] preemption, respectively."

22    Aguayo v. U.S. Bank, 653 F.3d 912, 918 (9th Cir. 2011). "Where Congress enacts an express

23    preemption provision, our task is to interpret the provision and 'identify the domain expressly

24    pre-empted by that language.'" Chae, 593 F.3d at 942 (quoting Medtronic, Inc. v. Lohr, 518 U.S.

25    470, 484 (1996)). "Field preemption reflects a congressional decision to foreclose any state

26    regulation in the area, even if it is parallel to federal standards." Arizona v. United States, 132 S.

27    Ct. 2492, 2502 (2012). Ultimately, "[r]egardless of the name attached to the type of preemption,

28    the dispositive issue in any federal preemption question remains congressional intent." Aguayo,

653 F.3d at 918.  Courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Lohr, 518 U.S. at 485.

Here, plaintiff fails to allege preemption by any federal law that deals with the revocation of a driver's license as a result of a lapses of consciousness, nor does plaintiff point to a federal law that expressly preempts California's statutes addressing these circumstances.  Indeed, 14 C.F.R. § 61.23 provides, in part, that "[a] person using a U.S. driver's license to meet the requirements of this paragraph must . . . [c]omply with each restriction and limitation imposed by that person's U.S. driver's license and any judicial or administrative order applying to the operation of a motor vehicle." 14 C.F.R. § 61.23(c)(2)(i).  Thus, the regulation specifically requires compliance with any administrative ruling regarding an individual's driver's license.  Such an administrative ruling would be issued in accordance with the vehicle regulations in the state where the driver's license is issued by that state's Department of Motor Vehicles, which is precisely what occurred in this case.

Finally, the California regulations at issue here are not related to the issuance of a pilot's license such that the federal aviation regulations plaintiff cites can be said to preempt them.  Plaintiff's concern with aviation regulations, which he emphasized at hearing on the motion, are not reflected in any well-pleaded allegations regarding interference with his pilot's license or facts showing that any effect the defendants' actions had on his rights under federal aviation law.

 For all these reasons, this claim must be dismissed for failure to state a claim.

C.      Dr. Buss's Motion to Strike

Dr. Buss filed a motion to strike on July 14, 2014, arguing plaintiff was given twenty-one days from June 10, 2014 to file an amended complaint, but he did not file it until twenty-two days after June 10, 2014.  ECF No. 49-1 at 4.  Defendant Dr. Buss requests the court to strike plaintiff's untimely amended complaint.  Id.

Federal Rule of Civil Procedure 12(f) provides in pertinent part that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial matter is that which has no essential or important relationship to the claim for relief

1    or the defenses being pleaded[, and] [i]mpertinent matter consists of statements that do not

2    pertain, and are not necessary, to the issues in question.'" Fantasy, Inc. v. Fogerty, 984 F.2d

3    1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and

4    Procedure § 1382, at 706–07 & 711 (1990)), rev'd on other grounds by 510 U.S. 517 (2004). The

5    granting of a motion to strike may be proper if it will make trial less complicated or eliminate

6    serious risks of prejudice to the moving party, delay, or confusion of the issues. See id. at 1527–

7    28. However, "[m]otions to strike are disfavored and infrequently granted." Neveau v. City of

8    Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citations omitted).

9        Dr. Buss's motion is misplaced. A motion to strike under Rule 12(f) concerns the content

10   of a pleading, not the timeliness of the pleading. Accordingly, the motion to strike must be

11   denied.

12   D.    Leave to Amend

13       The court has carefully considered whether plaintiff can amend his complaint to state a

14   claim over which this court would have subject matter jurisdiction. "Valid reasons for denying

15   leave to amend include undue delay, bad faith, prejudice, and futility." Cal. Architectural Bldg.

16   Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake

17   Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that,

18   while leave to amend shall be freely given, the court does not have to allow futile amendments).

19       When a plaintiff appears pro se in a civil rights case, "the court must construe the

20   pleadings liberally and must afford plaintiff the benefit of any doubt." Karim-Panahi v. L.A.

21   Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988). When interpreting the pleadings liberally,

22   however, the court "may not supply essential elements of the claim that were not initially pled."

23   Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Additionally, a

24   court need not accept as true unreasonable inferences, unwarranted deductions of fact, or

25   conclusory legal allegations cast in the form of factual allegations. See Adams v. Johnson, 355

26   F.3d 1179, 1183 (9th Cir. 2004). A pro se litigant "must be given leave to amend his or her

27   complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by

28   amendment." Id. at 623 (citation omitted).

1  The deficiencies identified here cannot be cured by amendment.  The undersigned has

2  determined that the State of California and Department of Motor Vehicles are entitled to

3  immunity under the Eleventh Amendment.  No § 1983 claim can be stated against them.  The

4  allegations of the first amended complaint suggest no possible theory under which any of the

5  other moving defendants could be considered state actors subject to suit under § 1983.

6  Accordingly, even without reference to the claims' substantive lack of merit, it is clear that

7  amendment would be futile.  Because these defendants are indisputably private parties, the court

8  can discern no way that additional facts could save the constitutional claims.  Accordingly,

9  plaintiff's federal claims against the moving defendants under § 1983 should be dismissed

10  without leave to amend.  Cal. Architectural Bldg. Prod., 818 F.2d at 1472.

11  E.  Supplemental Jurisdiction

12  Having recommended that plaintiff's federal claims against the moving defendants be

13  dismissed without leave to amend, the undersigned will recommend that the court decline to

14  exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c).

15  Therefore, the court will not reach the merits of defendants' motions as to claims two, nine and

16  ten of plaintiff's first amended complaint.[4]

17  CONCLUSION

18  Based on the foregoing, IT IS HEREBY ORDERED that:

19  1.  Dr. Buss's request for judicial notice, ECF No. 48-2, is denied as unnecessary;

20  2.  Dr. Popke's request for judicial notice, ECF No. 50-2, is denied as unnecessary; and

21  IT IS HEREBY RECOMMENDED that:

22  1.  The State defendants' motion to dismiss, ECF No. 47, be granted as to plaintiff's

23  federal claims;

24  2.  Dr. Buss's motion to dismiss, ECF No. 48, be granted as to plaintiff's federal claims;

25  3.  Dr. Popke's motion to dismiss, ECF No. 50, be granted as to plaintiff's federal claims;

26  4.  Sutter's motion to dismiss, ECF No. 51, be granted as to plaintiff's federal claims;

27

28

---

[4] Should the district judge assigned to this case decline to adopt these findings and
recommendations, defendants may renew their motions as to claims two, nine and ten.

23

5. Dr. Buss's motion to strike, ECF No. 49, be denied;

6. Plaintiff's federal claims be dismissed without leave to amend; and

7. Plaintiff's remaining state law claims be dismissed without prejudice to the re-filing of an action in state court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 28, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE